On October 26, 1998, appellant, Todd Eismon, was charged with one count of domestic violence in violation of R.C. 2919.25(C) and one count of resisting arrest in violation of R.C. 2921.33. Said charges arose from an incident involving appellant's wife, Rose Eismon.
By court order filed November 3, 1998, a trial was set for December 1, 1998. On the morning of trial, appellant requested a continuance claiming no notice of the trial date. Said request was denied. The trial court commenced the trial. At the conclusion of the state's case and again at the conclusion of the trial, appellant made motions for acquittal pursuant to Crim.R. 29. Said motions were denied.
By journal entry filed December 1, 1998, the trial court found appellant guilty of the resisting arrest charge and not guilty of the domestic violence charge. The trial court sentence appellant to thirty days in jail, twenty days suspended, and imposed a $150 fine and two years probation.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR A CONTINUANCE.
II
 THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FILED DECEMBER 1, 1998.
III
 THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AFTER APPELLEE'S CASE IN CHIEF.
IV
 THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AFTER ALL THE EVIDENCE, PER O CRIM R 29(B).
V
 THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT A FINDING OF GUILTY FOR RESISTING ARREST HEREIN.
 I
Appellant claims the trial court erred in denying his request for a continuance. We disagree.
The granting of a continuance rests in the trial court's sound discretion. State v. Unger (1981), 67 Ohio St.2d 65. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
Appellant argues his trial counsel was not notified of the trial date until November 28, 1998, four days before trial. However, appellant does not contest the fact that the trial court notified appellant of the trial date by court order filed November 3, 1998, as no defense counsel was noted of record at the time. Notice of representation by defense counsel was filed on the next day, November 4, 1998.
On the morning of trial, appellant requested a continuance claiming no notice of the trial date. T. at 4. The trial court denied said request. Id. Thereafter, the state requested a continuance claiming the victim, Mrs. Eismon, had not been personally served. Id. The trial court denied this request. T. at 4-5.
We note although defense counsel was aware of the trial date on November 28, 1998, the request for a continuance was not made until the morning of trial. Based upon the lateness of the request and the fact that the trial court also denied the state's request, we find no abuse of discretion by the trial court in denying appellant's request for a continuance.
Assignment of Error I is denied.
 II
Appellant claims the trial court erred in denying his December 1, 1998 multi-branched motion.
On the morning of trial, appellant filed a motion to compel discovery, suppress evidence and dismiss the domestic violence charge. Pursuant to Crim.R. 12(C), all pretrial motions "shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier." Appellant was arraigned on October 26, 1998 and the trial was held on December 1, 1998. Clearly the multi-branched motion filed the morning of trial was untimely under Crim.R. 12(C).
Assignment of Error II is denied.
 III, IV, V
Appellant claims the trial court erred in denying his motions for acquittal, and the finding of guilty on the resisting arrest charge was against the manifest weight of the evidence. We disagree.
Crim.R. 29 states as follows:
 (A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus:
 Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
Appellant was convicted of resisting arrest in violation of R.C. 2921.33 which states "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."
Patrolman Eric McKee of the Newark City Police Department testified he and his partner were dispatched to a domestic disturbance at appellant's home. T. at 16. At the scene, the officers were informed by appellant's niece, Tyra McMannis, of an argument inside the home. T. at 17. The officers could see appellant in the home. Id. The officers knocked on the door and appellant came to the door and pulled it shut. Id. The officers attempted to talk with appellant but he appeared agitated. Id.
The officers then asked to speak to Mrs. Eismon. Id. While Mrs. Eismon was talking to Officer McKee's partner outside on the sidewalk, Officer McKee attempted to establish some sort of rapport with appellant however, appellant shut the door and broke off all communications. Id. Officer McKee then approached his partner and Mrs. Eismon. Id. Mrs. Eismon told the officers appellant "had threatened to, to end her life that evening and she felt if she stayed in the residence with him that physical harm would come to her." T. at 18. Thereafter, the officers attempted to again initiate contact with appellant:
 A. We knocked on the door, he again came to the door but wouldn't open the exterior door. We told him we definitely needed to come in to speak with him. He was agitated, said we could not come in. We said we had no choice, we have to investigate this complaint fully and we, we just actually wished his side of the story. At this time we were able to open the exterior door. He slammed the interior door on Patrolman Cochran and I. We opened the door and I stated to the Defendant that he was under arrest for domestic violence. He then tensed up. Patrolman Cochran attempted to grab one of his arms and I attempted to grab the other one. We were standing in the middle of the living room at this point. The Defendant would not place his hands behind his back, stated that he would not. I kept stating quit resisting. He stated he would not quit resisting until we let go of his arms. We stated we were not going to do that. We were then able to pull the Defendant over towards the couch and pin him down against the couch at which time Patrolman Cochran and I were able to handcuff Mr. Eismon.
T. at 18-19.
The defense presented the testimony of Ms. McMannis who was present at the time of appellant's arrest. Ms. McMannis testified to the event as follows:
 A. And the cop started pushing on it and he didn't get to lock it or anything cause the cops were pushing. They pushed him in and he like fell towards the loveseat and then he went and stood by the coffee table. And then they go, sir, you're gonna have to cooperate, you're gonna have to cooperate. And he kept saying, you know, I don't think so, putting his hands up and they said if you don't cooperate we're gonna get you for resisting arrest. And at that time he put his hands up and they started putting his hands down and they grabbed his hand and pushed him over toward the loveseat and then they said, you know, you're gonna have to cooperate with us and he's like, I am, I am.
T. at 40.
Appellant testified he did attempt to bar the officers' entry into his home but he "kinda let go" and "stumbled a little bit." T. at 50. Appellant claimed he did not resist arrest but that each officer grabbed an arm, yanked his arms and told him to put his arms behind his back or they would charge him with resisting arrest. Id. Appellant claimed he had cooperated. T. at 51.
Given the testimony of the three incidents of shutting the door on the officers and appellant's refusal to be seized, we find sufficient credible evidence to support appellant's conviction for resisting arrest and no manifest miscarriage of justice.
Assignments of Error III, IV and V are denied.
The judgment of the Municipal Court of Licking County, Ohio is hereby affirmed.
By Farmer, J., Gwin, P.J. and Edwards, J. concur.
---------------------------
---------------------------
 --------------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Municipal Court of Licking County, Ohio is affirmed.
---------------------------
---------------------------
 --------------------------- JUDGES